**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| IN RE:  VIJAY K. TANEJA,<br>        Debtor, | ) | |
| | ) | |
| | ) | Case No. 08-13293-SSM |
| HSBC BANK USA NATIONAL | ) | |
| ASSOCIATION, AS TRUSTEE FOR | ) | Chapter 11 |
| MLMI SERVICES 2006-A1 | ) | |
| | ) | Jointly Administered |
| | ) | |
| | ) | |
|         Plaintiff, | ) | Adv. No. 09-01047-SSM |
| | ) | |
| v. | ) | |
| | ) | |
| H. JASON GOLD, CHAPTER 11 | ) | |
| TRUSTEE, | ) | |
| | ) | |
| | ) | |
|         Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff HSBC Bank USA National Association, as Trustee for MLMI Services 2006-A1 ("HSBC"), submits this memorandum in opposition to the Motion To Dismiss Amended Complaint and Memorandum in Support Thereof filed by H. Jason Gold, Chapter 11 Trustee ("Trustee").

### I.  Introduction and Summary

The Amended Complaint asserts two causes of action seeking to resolve a dispute between the Trustee and HSBC over entitlement to the proceeds from the sale of certain real

Richard E. Lear (VSB # 25361)
Thomas J. McIntosh (VSB # 77059)
Holland & Knight LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
(202) 955-3000
Counsel to HSBC Bank USA National Association,
Trustee for MLMI Services 2006-A1

property known as 4862 Eisenhower Avenue, Unit #465, Alexandria, Va. ("Property"). The Property, which was owned by Debtor Vijay K. Taneja ("Debtor") at the inception of this Chapter 11 case, was sold by the Trustee pursuant to a Court Order which required that the Trustee segregate and hold the proceeds of the sale in escrow pending the determination of HSBC's rights in the sale proceeds.

Count I of the Amended Complaint seeks a declaration by the Court that: (i) HSBC has a valid and enforceable first lien on the Property and the proceeds thereof by virtue of a deed of trust ("Taneja Deed of Trust") executed by Debtor and recorded in the land records of the City of Alexandria on June 9, 2005, and (ii) the proceeds from the sale of the Property should be released and paid to HSBC pursuant to its lien. HSBC was compelled to file Count I because the Trustee has taken the position that HSBC's lien was "released" by virtue of the unauthorized and fraudulent execution and recordation of a document entitled "Certificate of Satisfaction" by Debtor in the summer of 2005.

Count II, which is pled in the alternative, seeks the imposition of a constructive trust on the proceeds from the sale of the Property in favor of HSBC if, and only if, the Court finds that the Debtor's unauthorized and fraudulent execution and recordation of the purported Certificate of Satisfaction effectuated a release of the Deed of Trust.

The facts pertinent to the validity and enforceability of HSBC's lien, as alleged in the Amended Complaint, and which must be accepted as true for purposes of the Motion to Dismiss, are that: (1) HSBC is the holder of a note in the amount of $375,920.00 that is secured by a lien on the Property pursuant to the Deed of Trust; (2) the Taneja Deed of Trust was recorded in the land records in June 2005; (3) the "Certificate of Satisfaction" was signed and recorded in the land records in August 2005 by someone who was not the holder of the note and who was not

authorized by the holder of the note to release the lien of the Deed of Trust; and (4) contrary to the false statements made in the "Certificate of Satisfaction," the note secured by the Deed of Trust was not satisfied at the time the "Certificate of Satisfaction" was signed and recorded, and in fact, has never been satisfied. The Court should summarily deny the Motion to Dismiss with respect to Count I because *the Motion to Dismiss does not even attempt to address the legal sufficiency of Count I.* Instead, the entire Motion to Dismiss is directed solely to Count II, which seeks the imposition of a constructive trust as an alternative remedy in the event that HSBC does not prevail on Count I. *See* Motion To Dismiss at 4-7 (arguing that HSBC has not pled sufficient facts to support imposition of constructive trust) and at 7-13 (arguing that even if constructive trust was adequately pled, Trustee's "strong-arm" powers under 11 U.S.C. § 544(a)(3) would "trump" claim for constructive trust).

To the extent the Trustee seeks to invoke the "strong-arm" powers under 11 U.S.C. § 544(a)(3) to avoid HSBC's lien on the grounds that he stands in the shoes of a hypothetical bona fide purchaser for value of the Property, the Trustee must file an avoidance action against HSBC and prove his entitlement to such relief. 11 U.S.C. § 544(a)(3) is not self executing. Liens that are subject to avoidance under 11 U.S.C. § 544(a) are merely voidable, they are not automatically void. And in order to invoke his avoidance powers, the Trustee must file an adversary proceeding before the expiration of the statute of limitations.

Moreover, 11 U.S.C. § 544(a)(3) would not permit the Trustee to avoid HSBC's perfected lien in any event, even if an appropriate action were filed. Under Virginia law, a purchaser of real property is charged with notice of all recorded instruments contained in the chain of title. As alleged in the Amended Complaint, in this case the chain of title reveals a fraudulent scheme perpetrated by Debtor and others to defraud purchasers of secured loans in the secondary

mortgage market, such as HSBC. Knowledge of these transfers would have excited the suspicions of a purchaser of ordinary care and prudence and would have led such a purchaser to uncover that Debtor's release of the Deed of Trust was unauthorized and fraudulent. Thus, the Trustee, standing in the shoes of a purchaser perfecting his or her transfer on the date Debtor commenced his bankruptcy case, would not qualify as a bona fide purchaser of the Property.

The Trustee's arguments regarding Count II are also without merit. Assuming *arguendo* that Debtor's unauthorized and unlawful filing of the Certificate of Satisfaction somehow effectuated a nominal release of the Deed of Trust, HSBC nonetheless retained an equitable interest in the Property. By virtue of Debtor's attempt to extinguish HSBC's lien and to claim title to the Property free and clear of HSBC's lien, Debtor is deemed to hold HSBC's lien in constructive trust for HSBC's benefit. Upon the sale of the Property, HSBC's lien attached to the proceeds of sale and, per this Court's order, those funds are currently being held in escrow for the explicit purpose of determining the extent of HSBC's interest. Thus, despite the Trustee's vain argument to the contrary, the *res* to which HSBC's constructive trust attaches has clearly been identified, segregated, and traced to Debtor and the Trustee, as his successor-in-interest.

## II. Facts[1]

At the time Debtor filed his bankruptcy petition, he owned the Property. (Am. Compl. ¶ 4.) The Property secured a note in the amount of $375,920.00 (the "Note") pursuant to a deed of trust (the "Deed of Trust") executed by Debtor in favor of Financial Mortgage, Inc. ("FMI") as trustee for the benefit of Mortgage Electronic Registration Systems, Inc. ("MERS"). (Am. Compl. ¶ 5.)

Debtor purchased the Property and granted the Deed of Trust on June 1, 2005. (Am.

---

[1] These facts are based on the allegations of the Amended Complaint, which must be accepted as true for purposes of the Motion to Dismiss.

Compl. ¶ 25(a).)  On June 9, 2005, the Deed of Trust was recorded as instrument number 050019374 among the land records for the City of Alexandria, Virginia.  (Am. Compl. ¶ 6.)  On August 18, 2005, Debtor, as President of FMI, recorded a certificate of satisfaction (the "Certificate of Satisfaction") purportedly and fraudulently attempting to release the Deed of Trust.  (Am. Compl. ¶¶ 8-9.)  The Certificate of Satisfaction states:

> The undersigned, holder of the above-mentioned note(s) secured by the above-mentioned deed of trust does hereby certify that the same has/have been paid in full, and the lien therein created and retained is hereby released.

(Am. Compl. ¶ 11.)  This statement was utterly false in all respects at the time it was made. FMI, was no longer the holder of the note secured by the Taneja Deed of Trust, the Note has not been paid in full, and the lien created by the Taneja Deed of Trust was not released.  (Am. Compl. ¶ 12-17.)  In fact, in the interim between the execution and recordation of the Taneja Deed of Trust and execution and recordation of the Certificate of Satisfaction, FMI had sold the Note and assigned all of its rights under the Taneja Deed of Trust to Washington Mutual Bank, F.A.  ("WAMU") (Am. Compl. ¶ 15.)  Thus, since FMI was no longer the holder of the Note or beneficiary of the Deed of Trust, Debtor and FMI were legally incapable of recording any certificate of satisfaction or releasing the Deed of Trust.  HSBC is now the holder of the Note and the beneficiary of the Deed of Trust.  (Am. Compl. ¶ 7.)

Not only was the Certificate of Satisfaction false, but a hypothetical purchaser of the Property, who perfected its transfer on the date Debtor commenced his bankruptcy case, would not qualify as a "bona fide purchaser" because such a purchaser would be charged with knowledge of facts putting him on notice of the Debtor's fraudulent scheme.  (*See* Am. Compl. ¶¶ 25-31.)  Contrary to the Trustee's disingenuous assertion that HSBC does not allege facts to support this conclusion (*see* Mot. Dismiss at 9), the Complaint alleges the following facts –

which must be accepted as true for purposes of the pending Motion to Dismiss -- establishing that a hypothetical purchaser would be on notice of Debtor's fraudulent scheme:

- The public land records of the City of Alexandria, Virginia, contain a large number of deeds, deeds of trust, and certificates of satisfaction purporting to reflect a series of transfers related to the Property occurring between June 1, 2005, and November 30, 2005, including the fact that:

  o the Property was purportedly conveyed 7 times to 6 different individuals besides the original grantor;

  o 12 separate liens were purportedly granted on the Property in favor of the same lender, FMI;

  o 5 of the purported grantees took out first and second secured loans of similar size and structure, all from FMI;

  o the President and person acting on behalf of FMI was the Debtor, who was the original purchaser of the Property in his individual capacity and the individual who held record title at the end of the series of fraudulent transfers; and

  o all of the 12 liens were purportedly released by FMI within 5 months of being granted, with most of the liens being released within 6 weeks of being granted.

  (Am. Compl. ¶ 25(a)-(g).)

- "A hypothetical purchaser who perfected its acquisition of the Property on June 9, 2008, would be on notice of the recorded instruments described . . . above." (Am. Compl. ¶ 26.)

- "The fact that the Property was purportedly conveyed seven times within 6 months, with record title ending up in the name of Debtor, the original purchaser of the Property, would have excited the suspicion of a purchaser of ordinary care and prudence and would have caused such purchaser to inquire as to the bona fides of those seven transfers." (Am. Compl. ¶ 27.)

- "The fact that liens were granted on the Property twelve times within 6 months, that the purported secured lender was the same company – FMI – for each of the purported loans, that five of the purported owners took out first and second secured loans of similar size and structure, and that the president and person acting on behalf of the purported lender – Debtor – was himself a grantee of the Property on two separate occasions, would have excited the suspicion of a purchaser of ordinary care and prudence and would have caused such purchaser to

inquire as to the bona fides of those twelve secured loans and the purported releases of the deeds of trust." (Am. Compl. ¶ 28.)

- "The frequency with which the twelve deeds of trust on the Property were purportedly released by certificates of satisfaction executed by the same person – Debtor – on behalf of the same lender, coupled with the fact that many of the deeds of trust were recorded in the face of multiple existing deeds of trust which were not yet released, would have excited the suspicion of a purchaser of ordinary care and prudence and would have caused the purchaser to inquire as to the bona fides of the certificates of satisfaction." (Am. Compl. ¶ 29.)

- "The recorded instruments described [above] would have excited the suspicion of a purchaser of ordinary care and prudence, would have caused such purchaser to inquire as to the bona fides of the Certificate of Satisfaction, and necessarily would have led to the discovery that the recorded Certificate of Satisfaction was invalid and the result of fraud by the Debtor." (Am. Compl. ¶ 30.)

Debtor filed a chapter 11 petition on June 9, 2008. In response to the Trustee's stated intent to sell the Property free and clear of liens, HSBC filed this adversary proceeding on February 24, 2009. The Trustee sold the Property pursuant to an order that required that he hold the proceeds of sale in escrow pending the determination of HSBC's rights therein. (Am. Compl. ¶ 19.)

### III. Argument

A.    <u>Legal Standard</u>

A complaint satisfies Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged." *Id.* Rule 12(b)(6) motions are not, however, appropriate to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244-45 (4th Cir. 1999).

In reviewing a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)). Dismissal is warranted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. "[A] rule 12(b)(6) motion should be granted only in very limited circumstances." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

B.    The Motion to Dismiss Should Be Denied as to Count I Because the Amended Complaint Establishes that the Deed of Trust Was Not Released

Upon transfer of a note secured by a deed of trust, the assignee-noteholder becomes the beneficiary of the deed of trust and is invested with the rights provided thereby. *See Waynesboro Nat'l Bank v. Smith*, 151 Va. 481, 494, 145 S.E. 302, 306 (1928). The Virginia Code has incorporated this principle into its provisions governing the release of a deed of trust. Virginia Code § 55-66.3 requires a certificate a satisfaction to "be signed by the creditor or his duly authorized agent, attorney or attorney-in-fact . . . ." *See also* § 55-66.12 (requiring a document evidencing a satisfaction to be "signed by the secured creditor"). Moreover, the term "creditor" is specifically defined, not in terms of the original beneficiary appearing on the deed of trust, but as "the holder, payee or obligee of a note, bond or other evidence of debt." § 55-66.3(D); *see also* § 55-66.4:1 (showing that a certificate of satisfaction is to be executed by the "holder(s) of the . . . note(s) secured by the . . . deed of trust"); 1983-84 Va. Op. Atty. Gen. 37, 1983-84 Va. Rep. Atty. Gen. 37, 1984 WL 184159, at *1-2 (explaining that, under former § 55-66.3, whether a deed of trust is "duly cancelled" depends on "the intention of the bond holder to cancel her rights as the holder and the identity of the person purporting to cancel the instrument").

Therefore, under Virginia law, a certificate of satisfaction is not effective unless it is executed or authorized by the present holder of the note secured by the deed of trust.

As alleged in the Amended Complaint, when Debtor executed the fraudulent Certificate of Satisfaction, (i) FMI was no longer the holder of the Note, having assigned it to WAMU, and (ii) Debtor was not authorized by the holder of the Note to release the Deed of Trust. (Am. Compl. ¶¶ 15-16.) Since FMI was not the holder and was not authorized by the holder to file the Certificate of Satisfaction, Debtor was legally incapable of releasing the Deed of Trust. *See* Virginia Code § 55-66.3.

Thus, the Trustee blatantly mischaracterizes the facts alleged in the Amended Complaint when he offers the gratuitous conclusion that "the Amended Complaint[] [admits that] the deed of trust allegedly securing Mr. Taneja's Note was released prior to the Petition Date." (Motion to Dismiss at 2.) In fact, the Amended Complaint alleges the exact opposite:

> The Debtor's execution and recordation of a false and fraudulent Certificate of Satisfaction did not effectuate a release of the Taneja Deed of Trust . . . because FMI was not the holder of the Note at the time and neither FMI nor Debtor had the right to release the Taneja Deed of Trust.

(Am. Compl. ¶ 21.) As alleged in the Amended Complaint, the Certificate of Satisfaction was void. *See* Va. Code § 55-80 ("Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or <u>other writing given with intent to delay, hinder or defraud creditors</u>, purchasers or other persons of or from what they are or may be lawfully entitled to <u>shall</u>, as to such creditors, purchasers or other persons, their representatives or assigns, <u>be void</u>." (emphasis added)). As a result, HSBC continues to enjoy a secured interest in the Property (and the proceeds from the sale thereof) to the extent necessary to satisfy the Note.

The Motion to Dismiss does not even attempt to articulate an argument as to why Court I of the Amended Complaint should be dismissed. The Trustee has not offered any reason why the unauthorized and fraudulent execution and recordation of the Certificate of Satisfaction should be deemed to have effectuated a release of the Taneja Deed of Trust despite the fact that the Certificate of Satisfaction: (i) was not signed by the holder of the Taneja Note; (ii) was not signed by a person authorized to release the Taneja Deed of Trust; and (iii) was entirely false. Instead the Trustee's entire Motion to Dismiss is directed solely to Count II, which seeks imposition of a constructive trust in the event HSBC does not prevail on Count I. See Motion to Dismiss at 4-7 (arguing Amended Complaint fails to allege facts sufficient to warrant constructive trust) and 7-13 (arguing that Trustee's "strong arm" powers trump claim for constructive trust). Since the Trustee's Motion to Dismiss does not even attempt to address the sufficiency of Count I, and for the reasons stated above, the Motion to Dismiss must be denied as to Count I.

> C.     The Trustee Has Not Attempted to Avoid HSBC's Existing Secured Interest in the Property, and Could Not Even if He Attempted to Do So.

The Trustee's Motion to Dismiss cites 11 U.S.C. § 544(a)(3) for the supposed proposition that "[a] trustee's rights and powers as bona fide purchaser are conclusively presumed by statute." (Mot. Dismiss at 8.) The Trustee overstates his position. Instead of establishing a conclusive presumption, the language of § 544(a)(3) is merely permissive: "The trustee . . . may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bona fide purchaser of real property . . . ." 11 U.S.C. § 544(a)(3) (emphasis added.) Moreover, this avoidance power is subject to certain constraints that are particularly relevant to this action.

11 U.S.C. § 544(a)(3) is not self-executing. Rather, property interests that are putatively subject to a trustee's strong-arm powers are not brought into the debtor's estate until such time as they are affirmatively "recover[ed]" by the trustee. *See* 11 U.S.C. § 541(a)(3) (stating that the debtor's estate includes "[a]ny interest that the trustee recovers under section . . . 550 . . ."); § 550(a) (stating that "to the extent that a transfer *is avoided* under section 544 . . . , the trustee *may recover . . .*" (emphasis added)); *In re Mortgage Lenders Network, USA, Inc. (Mortgage Lenders Network, USA, Inc. v. Wells Fargo Bank, N.A.*), 380 B.R. 131, 136 (Bankr. D. Del. 2007) (explaining that § 541(a)(3) does not identify § 544 as independently establishing the scope of the debtor's estate and that "[a]ll the sections identified in § 541(a)(3) relate to property coming into the estate . . . *as the result of action taken by the court or a trustee*" (emphasis added)).[2] This requirement is significant, *inter alia*, because the trustee has the burden of proving that the "transfer" is capable of being avoided and that he may recover the property. *See In re Reasonover (King v. United States)*, 2001 WL 1168181, at *5 (Bankr. E.D. Va. Apr. 16, 2001) (explaining that the burden of proof under 11 U.S.C. § 550 shifts to the transferee only after "the trustee has avoided a transfer and has established that the property has been transferred to an immediate or mediate transferee"); 5 *Collier on Bankruptcy* ¶ 550.03[5], at 550-26 (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2009) [hereinafter "*Colliers*"].

Pursuant to 11 U.S.C. § 546(a)(1), the Trustee has until two years after the filing of the Chapter 11 petition initiating this Chapter 11 case to file an action seeking to avoid HSBC's lien using his "strong arm" powers. But the Trustee has not yet filed such an action and, therefore. has yet to demonstrate that HSBC's secured interest, as perfected by the recordation Taneja Deed of Trust, is capable of being "avoided" by the Trustee, much less that it has been affirmatively recovered. *See* 11 U.S.C. §§ 541(a)(3) & 550(a). Thus, as of the filing of this Chapter 11 case,

---

[2] The Bankruptcy Code specifically defines "transfer" to include "the creation of a lien." 11 U.S.C. § 101(54)(A).

the Debtor's estate holds the Property (and the proceeds from the sale thereof) only to the extent of Debtor's existing legal and equitable interest therein, § 541(a)(1), "and not to the extent of any equitable interest in such property that the debtor does not hold," § 541(d). In other words, the Property remains subject to HSBC's lien until the Trustee proves otherwise. Given the facts of this case, however, the Trustee is incapable of meeting this burden of proof.

The Trustee also overstates his position when he posits that "in the present case, the § 541(d) exclusion has no applicability as the property interest at issue, namely Plaintiff's secret unrecorded lien, comes into the estate through the exercise of the Trustee's avoidance powers." (Mot. Dismiss at 12.) First, § 541(d) applies because it prevents the Trustee from extinguishing HSBC's secured interest merely by claiming title to the Property. As the Motion to Dismiss suggests, HSBC's lien interest can come into the estate, if at all, only "through the exercise of the Trustee's avoidance powers." (Mot. Dismiss at 12.) In order for this to occur, the Trustee must demonstrate that HSBC's interest would be "voidable by . . . a bona fide purchaser of real property." § 544(a)(3). Contrary to the Trustee's characterization, HSBC's interest is not a "secret unrecorded lien," but is instead established by the duly recorded Taneja Deed of Trust. As explained more fully in Section III. D., *infra*, the fact that a fraudulent, unauthorized Certificate of Satisfaction was filed by Debtor would not absolve a subsequent purchaser from notice of HSBC's recorded lien.

Moreover, the purpose of Section 541(d) of the Bankruptcy Code, as it is applied to the secondary mortgage market, is to protect the interests of purchasers of mortgages on the secondary market, such as HSBC, who do not record their status as purchasers of the mortgages under state recordation systems. *See In re Mortgage Lenders Network*, 380 B.R. 131, at 138 (Bankr. D. Del. 2007). In *Mortgage Lenders Network*, the debtor, who had packaged mortgages

12

and sold them on the secondary mortgage market but had kept servicing rights, claimed that it could use its strong-arm powers under Section 544(a)(3) to avoid the interests of the purchaser of one of the sold mortgages because the purchaser had not recorded anything in the land records to evidence its status as the beneficiary of the mortgage. In rejecting the debtor's claim, the Court, quoting the legislative history of the Section 541(d), stated as follows:

> . . . the purchaser will often not record the purchaser's ownership of the mortgages or interests in mortgages under State recording statutes. These facts are irrelevant and the seller's retention of the mortgage documents and the purchaser's decision not to record do not change the [bankruptcy] trustee's obligation to turn the mortgages or interest in mortgages over to the purchaser . . .

*Id.* Similarly, WAMU's and HSBC's failure to record evidence of their acquisition of the Taneja Note does not affect the implementation of the § 541(d) limitation on what constitutes property of the debtor's estate.

D.  The Trustee Is Not Entitled To Bona-Fide-Purchaser Status

Even to the extent that 11 U.S.C. § 544(a)(3) is applicable, it would not afford the Trustee the ability to avoid HSBC's secured interest in the Property. Section 544(a)(3) only allows the Trustee to avoid transfers that are:

> voidable by . . . a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfers to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case . . . .

§ 544(a)(3). However, a subsequent purchaser who perfected a transfer of the Property on the date Debtor commenced his bankruptcy case would be on constructive notice of Debtor's fraudulent scheme to deprive HSBC of its lien on the Property and therefore would be incapable of qualifying as a bona fide purchaser. *See* 11 U.S.C. § 544(a)(3).

As this Court has held, "[i]n Virginia, a bona fide purchaser for value is required to examine the land records and is chargeable with such knowledge as might be revealed by such examination." *In re Wilson (Wilson v. Moir)*, 359 B.R. 123, 132 (Bankr. E.D. Va. 2006). Furthermore, the knowledge that is chargeable to a subsequent purchaser is not just limited to "all facts expressly stated in the instrument," but extends to "other matters therein suggested which might be disclosed upon prudent inquiry." *See Shaheen v. County of Mathews*, 579 S.E.2d 162, 172 (Va. 2003) (quoting *Chavis v. Gibbs*, 94 S.E.2d 195, 197 (Va. 1956); *In re Reasonover (Mayer v. United States)*, 236 B.R. 219, 233 (Bankr. E.D. Va. 1999) (same). Where fraud is involved, "it is not necessary to prove that the [purchaser] had positive knowledge of . . . fraudulent intent." *Crowder v. Crowder*, 99 S.E. 746, 748 (Va. 1919); *Dollar v. Dollar*, 27 Va. Cir. 474, 475, 1983 WL 210292, at *1 (Va. Cir. Ct.). Rather, "the rule in [Virginia] is well settled that a knowledge of facts sufficient . . . to lead a person of ordinary perception to infer fraud, or the means of knowing by the use of ordinary diligence, amounts to notice, and is equivalent to actual knowledge in contemplation of law." *Copperthite v. Loudoun Nat'l Bank*, 68 S.E. 392, 394 (Va. 1910) (internal quotation omitted). In other words,

> [I]t is sufficient to show that the [purchaser] was in possession of such facts 'as would have excited the suspicions of a man of ordinary care and prudence and put him on inquiry as to the bona fides of the transaction as would necessarily have led to the discovery of the fraud of the grantor.'

*Dollar*, 27 Va. Cir. at 475 (quoting *Crowder*, 99 S.E. at 748).

As the Amended Complaint explicitly alleges, the series of implausible transfers purportedly reflected in the Property's chain of title would have excited the suspicions of a purchaser of ordinary care and prudence and caused him or her to inquire as to the bona fides of the Certificate of Satisfaction. (*See* Am. Compl. ¶¶ 25-30.) After being conveyed by the developer to Debtor, the Property purportedly was transferred 6 times between July 11, 2005,

and November 30, 2005, ending up back in the hands of Debtor.  (Am. Compl. ¶ 25 & 27.)  Each of the transfers was purportedly financed by Debtor's company, FMI, with loans of similar size and structure.  (Am. Compl. ¶ 28.)  Similarly, in each transaction, the transferee purportedly granted similar deeds of trust to FMI as trustee for benefit of MERS, the named beneficiary under the deeds of trust.  (Am. Compl. ¶ 25.)  And each time, the deed of trust was released not by MERS, the named beneficiary on each deed of trust, but by Debtor on behalf of FMI.  (*Id.*)  This discrepancy, in and of itself, is sufficient to place a subsequent purchaser on notice that the Certificate of Satisfaction was unauthorized.

Moreover, these copycat deeds of trust were often recorded in the face of multiple unreleased, prior deeds of trust.  For example, the Deed of Trust at issue here was recorded on June 9, 2005, and the fraudulent Certificate of Satisfaction was recorded on August 18, 2005.  (Am. Compl. ¶ 25(a).)  In the intervening ten weeks, the Property was purportedly conveyed: (i) by Debtor to Leela Singh, with two additional deeds of trust being recorded on July 12, 2005 (Am. Compl. ¶ 25(b)); (ii) by Leela Singh to Pawan Bajpai, with two more deeds of trust being recorded on July 27, 2005 (Am. Compl. ¶ 25(c)); and (iii) by Pawan Bajpai to Satish Sood, with still two more deeds of trust being recorded on August 12, 2005 (Am. Compl. ¶ 25(d)).

The structure and timing of these conveyances—in which Debtor variously played the role of grantor, grantee, President of the lender, and representative of the noteholder/MERS—defy logic and common sense.  When faced with the knowledge of these bizarre, obviously suspect transactions, a hypothetical purchaser "has no right to shut his eyes or his ears to the inlet of information, and then say he is a bona fide purchaser without notice." *Shaheen*, 579 S.E.2d at 172 (quoting *Chavis*, 94 S.E.2d at 198).  A duty of inquiry is necessarily triggered, and such inquiry would, as the Amended Complaint alleges, lead any subsequent purchaser to discover

that the Certificate of Satisfaction was unauthorized and fraudulent. (*See* Am. Compl. ¶ 30.) Since the hypothetical purchaser could not "shut his eyes" to the string of fraudulent transfers exposed by the land records, the Trustee's strong-arm powers cannot be exercised.

The Trustee's insistence that a subsequent purchaser would not be charged with constructive notice of instruments recorded prior to the time Debtor became vested with legal title to the Property is misplaced. (*See* Motion to Dismiss at 10.) As the Virginia Supreme Court recently reiterated, "[W]here a party purchases an estate which is subject to the right of another, and that right is shown by the chain of title papers, the purchaser is charged with notice of all that the title paper or papers to which they refer may disclose upon complete examination." *Shaheen*, 579 S.E.2d at 171 (quoting *Chavis*, 94 S.E.2d at 197). In *Shaheen*, the court charged a purchaser acquiring title in 1994 with notice of a deed and a lease, which were recorded in 1901 and 1898, respectively, and which were given by the owners who held the property prior to the purchaser's grantor. *Id.* at 166 & 172. By relying on these distant documents, the court made clear that a purchaser of real property is charged not only with notice of conveyances made by the immediate grantor, but of all rights "shown by the *chain* of title papers." *See id.* at 171 (emphasis added).

The cases cited by the Trustee in support of an opposite conclusion are inapposite. In *In re E.M. Williams & Sons*, 2009 WL 1321034 (Bankr. E.D. Va. May 8, 2009), although the court noted that a purchaser is not required to "search the grantor index under the Debtor's name for any period prior to the time that the Debtor became the record owner," (*see* Mot. Dismiss at 10), the Trustee neglects to mention the very next sentence of the Court's opinion: "[A] bona fide purchaser from the Debtor ***would search the grantor index under the [prior owner's] name for all times before the Debtor became the record owner*** of the Real Property." *Id.* at *5 (emphasis

added).  Thus, *E.M. Williams & Sons* stands for the unremarkable proposition that a bona fide purchaser is not required to look for grants made by a particular owner before *that owner* obtained record title, a rule which happens to be required by statute.  *See* Va. Code § 55-105. But in the very next breath, the case makes clear that a bona fide purchaser is still required to determine whether more remote owners granted interests in the property that may encumber the purchaser's interest.

As *In re Wilson*, 359 B.R. 123 (Bankr. E.D. Va. 2006), explains, the statement that a bona fide purchaser need not look "beyond the period at which the legal title vested in the vendor" must be understood in context.  *Id.* at 133-34 (discussing *Doswell v. Buchanan's Ex'rs*, 30 Va. (3 Leigh) 365 (1831)).  In both *Wilson* and *Doswell*, the question was whether a purchaser could be charged with notice of interests given by the purchaser's immediate grantor that were recorded before the immediate grantor obtained legal title.  *In re Wilson*, 359 B.R. at 131-33. The cases do not address the situation in which prior owners of the property granted interests while they were record owners.  As *Shaheen* and *E.M. Williams & Sons* demonstrate, subsequent purchasers are on notice of such interests when reflected in the property's chain of title.

In this case, the various deeds of trust and certificates of satisfaction were recorded only after the purported grantor obtained record title. (*See* Compl. ¶ 25.)  As such, these transfers fall squarely within the chain of title and would be uncovered by a hypothetical purchaser searching the grantor index under the prior owner's name.  *See In re E.M. Williams & Sons*, 2009 WL 1321034, at *5.  Contrary to the Trustee's suggestion, a hypothetical purchaser obtaining title to the Property is not permitted to ignore these recorded instruments and pretend that the Property simply sprung into existence on the date Debtor acquired legal title.

E.     The Amended Complaint Alleges the Existence of a Constructive Trust

HSBC does not seek the imposition of a constructive trust simply based on the "moral superiority" of its claim. (*See* Mot. Dismiss at 6 (quoting Transcript of Oral Ruling at 20-21, *Gold v. Wells Fargo Funding, et al.*, Case No. 08-13293 (Bankr. E.D. Va. May 15, 2009)).) Rather, HSBC's claim is rooted in the duly-recorded Taneja Deed of Trust, which Debtor purported to release without authorization, through an overt act of fraud in a blatant attempt to extinguish HSBC's right to a first-priority, secured interest in the Property. To the extent the unauthorized fraudulent Certificate of Satisfaction could be deemed to actually release the Deed of Trust, HSBC's interest did not simply vanish into thin air. As the Amended Complaint alleges, by virtue of Debtor's fraudulent conduct and resultant unjust enrichment, HSBC enjoys a constructive trust in the Property and the proceeds of sale to the extent necessary to secure its interest in the Note. (*See* Am. Compl. ¶¶ 34-44.)

The Trustee's argument that the Amended Complaint fails to indentify the *res* and to trace such *res* to the constructive trustee is unavailing. (Mot. Dismiss at 4-6.) In fact, the Motion to Dismiss readily admits that the Amended Complaint identifies the *res* as the rights evidenced by the fraudulently released Deed of Trust, *i.e.* an interest in the Property and the proceeds of sale in an amount necessary to secure the unpaid balance of the Note. (*See* Mot Dismiss at 4-5 (citing Am. Compl. ¶¶ 38 & 43).)

Furthermore, the Amended Complaint also alleges the "transfer of a res to the constructive trustee." *In re Cardian (Citizens Fed. Bank v. Cardian Mortgage Co.*, 122 B.R. 255, 261 (Bankr. E.D. Va. 1990); (Am. Compl. ¶ 37 & 43). Bankruptcy courts are no stranger to the great variety of ways in which property can be transferred. *See In re Paschall (Terry v. Paschall)*, 403 B.R. 366, 373-74 (Bankr. E.D. Va. 2009) (citing 11 U.S.C. § 101(54)) ("'[T]ransfer' means each mode, direct or indirect, absolute or conditional, voluntary or

18

involuntary, of disposing of or parting with an interest in property.").  The Trustee, however, seeks to impose a draconian view of "transfer":  "[The release of the Deed of Trust] was not a transfer of an interest in the Property to Mr. Taneja, who already owned the Property both at the time of the recordation of the Deed of Trust and its release."  (Mot. Dismiss at 5.)  Debtor may have owned the Property, but his interest was subject to the lien evidenced by the Deed of Trust. His unauthorized recordation of the Certificate of Satisfaction purported to release that interest, resulting in an "involuntary . . . disposi[tion] of . . . an interest in property," *i.e.* a transfer.  *See* 11 U.S.C. § 101(54).

The *res* is also clearly traceable to Debtor and to the Trustee as Debtor's successor-in-interest.  The Property entered Debtor's bankruptcy estate subject to HSBC's equitable interest. *See* 11 U.S.C. § 541(d).  Upon the Trustee's motion to sell the Property free and clear of liens, the Court entered an order requiring the Trustee to hold the proceeds of sale in escrow for the specific purpose of determining HSBC's interest therein.  (Am. Compl. ¶ 19.)  Thus, the *res—i.e.*, the security interest previously delineated by the Deed of Trust—is clearly traceable to the proceeds of sale.  No commingling of the proceeds has been alleged, and if such commingling occurred, it would be in clear contravention of this Court's order approving the sale.  *See In re Wells (Lubman v. Wells)*, 296 B.R. 728, 733 (Bankr. E.D. Va. 2003) (holding that tracing must occur where the property subject to a constructive trust is commingled with other assets).

To the extent the Court finds that the Certificate of Satisfaction effectuated a nominal release of the Deed of Trust, the Amended Complaint alleges sufficient facts to establish the existence of a constructive trust.  Despite the Trustee's protestations, this Court has specifically recognized that the "concept of constructive trust is not inherently incompatible with the fair treatment of creditors in bankruptcy."  *In re Wells*, 296 B.R. at 734 (quoting *In re Dameron (Old*

*Republic Nat. Title Ins. v. Tyler)*, 206 B.R. 394, 400 (Bankr. E.D. Va. 1997)).  Moreover, this is not a case of "posthoc rationalizations provided by putative beneficiaries who are displeased because they are merely general, unsecured creditors."  *In re Greenbelt Road Second Ltd. P'ship*, 1994 WL 592766, at *3 (4th Cir.) (quoted in Mot. Dismiss at 6-7.)  HSBC is not a general, unsecured creditor, but a first-priority lienholder whose position was frustrated only by the Debtor's pursuit of an undisputedly fraudulent scheme.  Under the circumstances, a constructive trust is warranted.

## IV.  Conclusion

The Amended Complaint alleges facts sufficient to support a determination that Debtor's purported release of the Deed of Trust was legally defective and therefore void.  Moreover, the Amended Complaint alleges facts sufficient to establish that the Trustee cannot utilize his strong-arm powers to avoid HSBC's secured interest in the Property because a hypothetical purchaser could not qualify as a bona fide purchaser for value.  Finally, even if the Court were to find that the Taneja Deed of Trust was released by the unauthorized fraudulent Certificate of Satisfaction, the Amended Complaint alleges facts sufficient to support the existence of a constructive trust. For the foregoing reasons, the Trustee's Motion to Dismiss should be denied.

Respectfully submitted:


  /s/ Richard E. Lear           
Richard E. Lear (Va. Bar No. 25361)
Thomas J. McIntosh (Va. Bar No. 77059)
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC  20006
(202) 955-3000 (phone)
(202) 955-5564
richard.lear@hklaw.com
thomas.mcintosh@hklaw.com

Of Counsel:

Stephen A. Bogorad
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, DC  20006
stephen.bogorad@hkalw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2010, a copy of the foregoing Memorandum of Points and Authorities in Opposition to Motion to Dismiss Amended Complaint and proposed Order was served via ECF and by U.S. First Class Mail, postage prepaid, on:

Valerie P. Morrison
Rebecca L. Saitta
Wiley Rein LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA  22102

/s/ Richard E. Lear
Richard E. Lear

# 9110671_v2

---

Richard E. Lear (VSB # 25361)
Thomas J. McIntosh (VSB # 77059)
Holland & Knight LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
(202) 955-3000
Counsel to HSBC Bank USA National Association,
Trustee for MLMI Services 2006-A1